IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BRENDA JOYCE PARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 317-038 |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Brenda Joyce Parr appeals the decision of the Acting Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and disabled widow's insurance benefits under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

Plaintiff applied for DIB in October 16, 2012, and disabled widow's insurance benefits on May 26, 2015, alleging a disability onset date of October 12, 2004. Tr. ("R."), pp. 199-205, 215-222. Plaintiff's last insured date for purposes of the DIB application was June 30, 2010. R. 229. Plaintiff's first insured date for purposes of the disabled widow's benefits application was May 14, 2015, and the last insured date is June 30, 2020. R. 20. Plaintiff was forty-four years

old on her alleged disability onset date. R. 199. Plaintiff applied for benefits based on allegations of major depression, bi-polar disorder, loneliness, fear, hurt, and concentration. R. 248. Plaintiff has a twelfth grade education, and prior to her alleged disability, Plaintiff had accrued relevant work history as a corrections officer, dialysis lab technician, EMT, lab tech, secretary, front desk clerk, and sleever at a sewing factory. R. 249.

The Social Security Administration ("SSA") denied Plaintiff's applications initially, R. 74-80, and on reconsideration, R. 81-91. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 115-16, and the ALJ held a hearing on March 14, 2016. R. 32-73. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Tina Baker-Ivey, a Vocational Expert ("VE"). Id. On June 16, 2016, the ALJ issued an unfavorable decision. R. 14-26.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since October 12, 2004, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*.).

2. After June 30, 2010 (date last insured expired), the claimant has the following severe impairment: bipolar disorder (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform work limited to simple, routine work; work involving simple, work related decisions with few, if any, workplace changes; and can have occasional interaction with co-workers and supervision, but no public interaction (20 C.F.R. § 404.1565).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including dry cleaner helper, laundry laborer, and assembly line worker (20 C.F.R. §§ 404.1569 and 404.1569(a)). Therefore,

2

> the claimant has not been under a disability, as defined in the Social Security Act, from October 12, 2004, through June 16, 2016 (the date of the ALJ's decision) (20 C.F.R. § 404.1520(g)).

R. 19-26.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to fully consider Dr. Babatunde Fagbamiye's opinion in finding Plaintiff does not meet Listing 12.04. See doc. no. 7 ("Pl.'s Br."). The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 9 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence

to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ failed to fully consider Dr. Fagbamiye's opinion in finding Plaintiff does not meet Listing 12.04. See Pl.'s Br., pp. 5-7. As explained below, the ALJ concluded based on substantial evidence Plaintiff's impairment did not meet or medically equal Listing 12.04 and properly considered and gave little weight to Dr. Fagbamiye's opinions. Therefore, Plaintiff's

4

argument does not form a valid basis for reversal or remand.

> **A. The ALJ Properly Evaluated the Evidence and Concluded Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 12.04**
>
> **1. Step Three Framework and Standard**

If at step two of the evaluation process an ALJ finds a claimant has an impairment or combination of impairments that is "severe," then at step three the ALJ must determine whether that impairment or combination of impairments meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart B, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002); see also 20 C.F.R. § 404.1525(a)-(d). Moreover, "to show that his impairment matches a listing, it must meet *all* of the specified medical criteria[;] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original).

An impairment "medically equals" a listing where "the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a); see also Wilkinson o/b/o Wilkinson, 847 F.2d 660, 662 (11th Cir. 1987) ("In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.") (emphasis in original). Furthermore, "[a]ny medical findings in evidence [relating to medical equivalence] must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). A claimant cannot equal a listing by "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 193 U.S. at 531.

5

The claimant bears the burden of producing medical evidence demonstrating his condition or conditions meet or equal a listed impairment. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

### 2. Substantial Evidence Supports The ALJ's Finding Plaintiff's Severe Impairment Did Not Meet or Medically Equal Listing 12.04

Plaintiff argues the ALJ should have found her bipolar disorder meets or equals Listing 12.04 and failed to do so because he did not properly consider Dr. Fagbamiye's "medical findings related to Listing 12.04." Pl.'s Br. pp. 5-7. The ALJ's determination that Plaintiff's mental impairment does not meet or medically equal the criteria of Listing 12.04 is supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ found Plaintiff has the severe impairment of bipolar disorder. R. 20. However, at step three, the ALJ found the severity of Plaintiff's mental impairment does not meet or medically equal the criteria of Listing 12.04. R. 20. Listing 12.04, states affective disorders are:

> [c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
>    a. Anhedonia or pervasive loss of interest in almost all activities; or
>    b. Appetite disturbance with change in weight; or
>    c. Sleep disturbance; or
>    d. Psychomotor agitation or retardation; or
>    e. Decreased energy; or
>    f. Feelings of guilt or worthlessness; or
>    g. Difficulty concentrating or thinking; or

6

        h.        Thoughts of suicide; or
        i.        Hallucinations, delusions, or paranoid thinking; or

2.        Manic syndrome characterized by at least three of the following:

        a.        Hyperactivity; or
        b.        Pressure of speech; or
        c.        Flight of ideas; or
        d.        Inflated self-esteem; or
        e.        Decreased need for sleep; or
        f.        Easy distractibility; or
        g.        Involvement in activities that have a high probability of painful consequences which are not recognized; or
        h.        Hallucinations, delusions or paranoid thinking; or

3.        Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND

B.        Resulting in at least two of the following:

1.        Marked restriction of activities of daily living; or
2.        Marked difficulties in maintaining social functioning; or
3.        Marked difficulties in maintaining concentration, persistence, or pace; or
4.        Repeated episodes of decompensation, each of extended duration; OR

C.        Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.        Repeated episodes of decompensation, each of extended duration; or
2.        A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.        Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. 404, Subpart P, Appendix 1, § 12.04.[1]

The term "marked" means more than moderate but less than extreme and covers a limitation that interferes "seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Id. § 12.00C. "[E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace" qualify as "episodes of decompensation." Id. § 12.00C(4). The criterion of "repeated" episodes of "extended duration" are met when a claimant has three episodes within one year, or has an average of one episode, lasting for at least two weeks, every four months. Id.

### a. Paragraph B Criteria

First, the ALJ determined Plaintiff did not meet the paragraph B criteria because Plaintiff only had: (1) mild limitations in activities of daily living; (2) moderate deficiencies in social functioning and concentration, persistence and pace; and (3) no episodes of decompensation of extended duration. R. 21.

In support of his findings, the ALJ cited the following statements by Plaintiff in her function report. Regarding activities of daily living, Plaintiff has reported no problems taking care of her personal needs but sometimes does not get dressed or comb her hair and will occasionally go two to three days without bathing. R. 296. Plaintiff cooks small meals weekly but does not like to cook because she cannot focus. R. 297. Plaintiff takes drives alone two to three times a week and goes shopping once a month. R. 298. Plaintiff can pay bills and count

---

[1] The Commissioner revised the medical criteria for evaluating mental disorders effective January 17, 2017. 81 Fed. Reg. 66138-01 (Sept. 26, 2016). Because the ALJ issued his decision on June 16, 2016, the revised medical criteria do not apply.

8

change but reported she cannot handle a savings account or use a checkbook or money order. Id. As to social functioning, Plaintiff has no hobbies and does not like crowds but sees her family twice a week. R. 299. Finally, concerning concentration, persistence, and pace, Plaintiff has difficulty concentrating, paying attention, and completing tasks. R. 300. She must read instructions several times before understanding and has trouble expressing herself. R. 22. Dr. Fagbamiye testified Plaintiff's statements in the function report are a fair description of her condition during his treatment of her. R. 531-32.

Plaintiff's testimony at the March 14, 2016 ALJ hearing is also consistent with the ALJ's findings. Plaintiff testified she lives alone and has not been restricted from driving. R. 40, 42. Plaintiff can read and write, do simple math in her head, and make change. R. 43-44. Plaintiff testified her current medication "seems to be working" for her and have "stabilized" her since approximately 2012. R. 65-66. However, she still experiences anxiety. R. 66-67.

Furthermore, Dr. Fagbamiye's treatment notes for Plaintiff from August 2007 through April 2012 and during 2015 are similarly consistent. From 2012 onward, Dr. Fagbamiye consistently reported Plaintiff's thought process was logical and goal oriented; language skills, associations, cognitive functioning, fund of knowledge, and short and long term memory were intact; and she was fully oriented. R. 24, 376, 378, 380, 382, 496, 498, 500, 502, 504, 506.

The ALJ properly discounted Dr. Fagbamiye's opinions from his April 29, 2016 deposition as inconsistent with his treatment notes. R. 23, 25. However, as discussed in greater detail below, the ALJ properly gave little weight to Dr. Fagbamiye's opinions as "inconsistent with his progress notes . . . ." R. 23.

Thus, the ALJ's findings regarding the paragraph B criteria are consistent with the record as a whole, including Dr. Fagbamiye's opinion and treatment notes and Plaintiff's statements

9

about her condition. Accordingly, substantial evidence supports the ALJ's findings regarding the extent of Plaintiff's limitations and determination Plaintiff did not meet the paragraph B criteria.

### b. Paragraph C Criteria

Additionally, although it was not addressed by Dr. Fagbamiye, the ALJ considered the additional functional criteria in paragraph C for Listing 12.04, and found Plaintiff did not have a mental impairment or combination of mental impairments meeting the paragraph C criteria. R. 21. As for the first condition, the ALJ noted Plaintiff "has not had any episodes of decompensation of an extended duration." Id. Although Dr. Fagbamiye testified Plaintiff had "repeated episodes of decompensation" at his deposition, R. 529, the ALJ rejected the testimony as conflicting with his treatment notes, which do not mention any periods of decompensation. R. 376-438, 496-507. As for the second condition, the ALJ determined Plaintiff had only mild or moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace. Substantial evidence supports these findings as explained in § A(2), *supra*. Thus, a minimal increase in mental demands or a change in the environment would not cause Plaintiff to decompensate. Id.; Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 763 (11th Cir. 2014). As for the third condition, the Plaintiff testified she was able to live independently, indicating she is able to function outside of a highly supportive living arrangement. R. 40. Thus, substantial evidence supports the ALJ's determination Plaintiff did not meet the paragraph C criteria.

Thus, for all of these reasons, substantial evidence supports the ALJ's finding Plaintiff does not satisfy Listing 12.04.

### B. The ALJ Properly Discredited Dr. Fagbamiye's Opinions

#### 1. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Crawford, 363 F.3d at 1159 (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes, was unsupported by the medical evidence, and was based primarily on claimant's subjective complaints); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's

specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Sources that can provide evidence to establish an impairment include licensed physicians, but not physician's assistants. See Farnsworth v. Soc. Sec. Admin., 636 F. App'x 776, 783-84 (11th Cir. 2016); 20 C.F.R. § 416.913(a)(1).

Additionally, the Commissioner's regulations require the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, SSR 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Moreover, state agency medical consultants' opinions may be entitled to greater weight than the opinions of treating or examining sources if they are supported by evidence in the record. See id.; Jarett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining state consultants' opinions over treating physician's opinion); see also 20 C.F.R. § 404.1527(e)(2)(i), (iii).

Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

### 2. Substantial Evidence Supported the ALJ's Decision to Give Dr. Fagbamiye's Opinion Little Weight

Plaintiff argues the ALJ failed to address Dr. Fagbamiye's "medical findings relating to Listing 12.04" and give his opinions substantial or considerable weight. Pl.'s Br. pp. 5-7. Regarding Dr. Fagbamiye's medical opinion, the ALJ found, "While the treating psychiatrist testified to mental limitations, his testimony is inconsistent with his progress notes since 2015." R. 23. Accordingly, the ALJ stated:

> Dr. Babatunde Fagbamiye, treating psychiatrist is given little weight based on his opinion being inconsistent with his findings at office visits and history provided by claimant. Prior to June 20, 2010, Dr. Fagbamiye opinion [sic] is given little weight because it is inconsistent with treatment records.

R. 25 (citations omitted).

As an initial matter, Dr. Fagbamiye's opinion regarding whether Plaintiff met Listing 12.04 does not constitute a medical opinion but an administrative finding reserved for the Commissioner. 20 C.F.R. § 404.1527(d). Thus, while the ALJ was required to consider and evaluate his opinions, it is not given controlling weight or special significance. SSR 96-5P, 1996 WL 374183, at *2-3 (July 2, 1996).

Furthermore, the ALJ was entitled to give little weight to Dr. Fagbamiye's opinions because they are inconsistent with his treatment notes as well as Plaintiff's testimony and function report. While Dr. Fagbamiye opined Plaintiff would have marked limitations in carrying out simple instructions, understanding, remembering, and carrying out detailed instructions, and making simple, work-related decisions, R. 525-26, his most recent treatment notes indicate Plaintiff's thought process was logical and goal oriented, her cognitive functioning and memory were intact, and her judgment was fair and improving, R. 496, 498. Additionally, although Dr. Fagbamiye claimed Plaintiff would have marked restrictions on activities of daily

living, R. 528, he reported in his treatment notes Plaintiff presented as "well groomed" or with "adequate hygiene and grooming" during treatment, R. 496, 498, 500, 502, and Plaintiff testified she had no problems taking care of her personal needs, R. 269.

Also, Dr. Fagbamiye opined Plaintiff would have marked limitations in social functioning, R. 528-29, but Plaintiff reported occasionally going shopping and seeing her family members on a regular basis, R. 299. Finally, while Dr. Fagbamiye reported Plaintiff had repeated episodes of decompensation, R. 530, he never mentioned any episodes of decompensation in his treatment notes, much less repeated episodes of extended duration, as required by the Listing. Accordingly, Dr. Fagbamiye's opinions regarding Plaintiff meeting Listing 12.04 are inconsistent with his treatment notes and Plaintiff's reports, and the ALJ's decision to give Dr. Fagbamiye's opinion little weight was supported by good cause and substantial evidence. See Lewis, 125 F.3d at 1440; Phillips, 357 F.3d at 1241.

Plaintiff also argues the ALJ: (1) did not disprove "each element of [Listing 12.04] that Fagbamiye addresses" in his opinion; (2) discounted Dr. Fagbamiye's deposition "with minimal reviewable findings"; and (3) failed to explain how Dr. Fagbamiye's opinions were inconsistent with his treatment records. Pl.'s Br., p. 7. Although the ALJ did not explicitly address Dr. Fagbamiye's opinion regarding each element of Listing 12.04, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer, 395 F.3d at 1211); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability

14

benefits"). Furthermore, the ALJ discussed Dr. Fagbamiye's treatment records in great detail in relation to both Plaintiff's subjective complaints and the other objective evidence. R. 22-25. After thoroughly discussing the treatment notes, the ALJ specifically addressed Dr. Fagbamiye's opinion in relation to his treatment notes from 2015 stating, "[w]hile the treating psychiatrist testified to mental limitations, his testimony is inconsistent with his progress notes since 2015." R. 23.

Finally, Plaintiff argues the ALJ erroneously cites to Dr. Fagbamiye's deposition as "history provided by claimant." Pl.'s Br. p. 7. Plaintiff states "[i]t is thus unclear whether the ALJ realized that he was dealing with a deposition from the doctor at all rather than something prepared by the claimant." Id. Plaintiff's contention, however, is wholly unfounded. In fact, the ALJ specifically referred to Dr. Fagbamiye's testimony about Plaintiff's mental limitations in his decision. R. 23. Furthermore, it is implausible that the ALJ was confused about Dr. Fagbamiye being the direct source of the deposition testimony, as Dr. Fagbamiye described his professional background, gave medical opinions, and also consistently spoke about Plaintiff in the third person. R. 510-33. Without any clear evidence to the contrary, there is no reason to believe the ALJ did not "realiz[e] that he was dealing with a deposition form the doctor . . . ."

Thus, it is clear from the ALJ's decision he fully considered Dr. Fagbamiye's treatment records and deposition opinions and substantial evidence supported giving little weight to his opinions.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final

judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of June, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA